UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FRANCISCA RAMIREZ,<br><br>Plaintiff,<br><br>v.<br><br>BENITO VALLEY FARMS, LLC,<br><br>Defendant. | Case No. 16-CV-04708-LHK<br><br>**ORDER APPROVING SETTLEMENT**<br><br>Re: Dkt. No. 53 |

Before the Court is Plaintiff's Motion for Settlement Approval. Having considered the briefing and declarations of the parties, the arguments at the July 27, 2017 hearing, and the record in this case, the Court GRANTS the motion for settlement approval.

**I.  BACKGROUND**

   **A. Factual Background**

Plaintiff Francisca Ramirez ("Plaintiff") worked for Benito Valley Farm, LLC ("Defendant") from 2006 to 2016 as a seasonal agricultural worker harvesting green beans. ECF No. 54 at 2. During this time Plaintiff lived with her family in housing owned by Defendant. *Id.* Plaintiff alleges that her supervisor, Foreman Alfonso Flores, created a hostile work environment and engaged in discrimination and retaliation directed at Plaintiff. *Id.* at 3. Plaintiff also alleges

1  Defendant failed to comply with its legal duties in the provision of housing because the employee
2  housing in which Plaintiff resided contained serious habitability issues, including inadequate
3  flooring and the presence of rats and flies. *Id.* Plaintiff complained about these habitability issues,
4  but Defendant failed to adequately address the issues. *Id.* Plaintiff also alleges that Defendant
5  repeatedly failed to compensate employees for all hours worked, failed to pay overtime wages, and
6  between 2012 and 2014, failed to provide rest and meal breaks. *Id.* Plaintiff also alleges that
7  Defendant's payroll records and paycheck registers were defective and contain inaccurate
8  information. *Id.*

### B. Procedural History

Plaintiff filed the complaint in the instant case on August 17, 2016. ECF No. 1. Plaintiff filed an amended complaint ("FAC") on September 15, 2016. ECF No. 14. The FAC contained twenty claims, which sought damages for Plaintiff's nineteen individual claims and civil penalties under the PAGA. Defendant filed an answer, apparently to the original complaint, on October 25, 2016. ECF No. 20. Defendant then filed an answer to the FAC on December 9, 2016. ECF No. 34.

Before and after the filing of the complaint, Plaintiff conducted extensive investigation of the claims involved in the instant case. "The pre-suit investigation included extensive interviews with Plaintiff, a thorough review of potential witnesses and other corroborating evidence, as well as inspections of the employer-provided housing." ECF No. 54 at 3. After the filing of the complaint, "Defendant disclosed a sampling of employee records, which Plaintiff analyzed for wage and hour violations." *Id.* at 4.

On March 10, 2017, the parties attended a mediation session and reached a tentative settlement. *Id.* After several more rounds of negotiation, the parties executed a settlement agreement on June 12, 2017. *Id.* This settlement agreement, discussed in more detail below, provides $40,700 in compensation for Plaintiff's individual damages, $27,500 in civil penalties under the PAGA, injunctive relief, and $41,800 in attorney's fees, for a total settlement amount of $110,000.

## II. RELEVANT SETTLEMENT PROVISIONS

2

Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

Under the PAGA, "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." California Labor Code § 2699(1)(2). Therefore, in the instant case, the Court is not required to approve settlement provisions resolving Plaintiff's individual claims. However, the Court is required to approve the settlement provisions related to Plaintiff's PAGA claims. Additionally, Plaintiff has requested approval of the settlement provisions providing for attorney's fees and costs. Therefore, in discussing the settlement, the Court will discuss only those provisions of the settlement that are relevant to the PAGA claims and the request for attorney's fees and costs.

The settlement provides for $27,500 allocated to civil penalties to resolve Plaintiff's PAGA claims; this amount is referred to as the PAGA settlement fund. Settlement Agreement, Part II.A.(iii). Under the agreement, 226 employees are eligible to receive a share of the PAGA settlement fund. *Id.* A claims process will allocate the PAGA settlement fund to participating Eligible Employees who submit a timely claim. Each Eligible Employee who submits a claim to receive a share of the PAGA settlement fund is a "Claimant." Each Claimant will receive a share in proportion to the number of hours he or she worked relative to the cumulative total number of hours worked by all Eligible Employees. *Id.*

If any Eligible Employee does not submit a timely claim, their unclaimed share of the PAGA settlement funds will be reallocated to Claimants. *Id.* Each Claimant will receive a share of the total unclaimed funds in proportion to the number of hours he or she worked relative to the cumulative total hours worked by all Claimants. *Id.* To determine how much each Claimant will receive, the total hours worked by the Claimant is divided by the total number of hours worked by all Claimants, and then multiplied by the total amount of unclaimed funds. Settlement Agreement, Part II.A.iii.(4). If no Eligible Employees make a claim before the close of the claims period, the parties have agreed that, consistent with California Labor Code § 2699(i), the $27,500.00 will be paid in full to the LWDA. *Id.*

The settlement also provides for injunctive relief to resolve issues that gave rise to the instant case, including Defendants' violations of the PAGA. Defendant has agreed to comply with

3
Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

all California wage and hour laws, including properly paying workers for hours worked and maintaining proper payroll records. Defendant has agreed to an audit of its payroll by Plaintiff's counsel in March 2018 to confirm compliance. Settlement Agreement, Part I.A–F. Defendant has agreed to join a Farm Employer Association, and to ensure that its supervisory and non-supervisory employees are fully trained, as required under California law, regarding their obligation to prevent and respond to claims of sexual harassment. *Id.* In addition, at least one time during each harvesting season, the crew foremen will conduct a "tail-gate" meeting with their crew members on the topic of preventing sexual harassment and retaliation where the company's anti-harassment policies and complaint processes will be reviewed. *Id.* Defendant has also agreed to establish and communicate to its employees in Spanish a procedure for making complaints, including providing a telephone number for reporting harassment directly to the owner of Benito Valley Farm. *Id.*

Finally, the settlement provides for $41,800 for attorney's fees and costs.

## III. DISCUSSION

### A. Settlement Approval

"An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Thus, "[a]n action brought under the PAGA is a type of qui tam action." *Id.* at 429. Because a PAGA action is brought as proxy of law enforcement agencies, "[t]here is no requirement that the Court certify a PAGA claim for representative treatment like in Rule 23 . . . ." *Villalobos v. Calandri Sonrise Farm LP*, 2015 WL 12732709, at *5 (C.D. Cal. July 22, 2015). However, because a settlement of PAGA claims compromises a claim that could otherwise be brought by the state, the PAGA provides that "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." California Labor Code § 2699(1)(2).

A party seeking approval of a PAGA settlement must simultaneously submit the proposed settlement to the California Labor and Workforce Development Agency (LWDA) to allow the

LWDA to comment on the settlement if the LWDA so desires. The PAGA also states that courts may exercise their discretion to lower the amount of civil penalties awarded "if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). Because state law enforcement agencies are the "real parties in interest" for PAGA claims, the Court's task in reviewing the settlement is to ensure that the state's interest in enforcing the law is upheld. *Sakkab*, 803 F.3d at 435.

Other than the provisions discussed above, however, the PAGA does not establish a standard for evaluating PAGA settlements. Indeed, the LWDA has stated that "[t]he LWDA is not aware of any existing case law establishing a specific benchmark for PAGA settlements, either on their own terms or in relation to the recovery on other claims in the action." LWDA Response at 3, *O'Connor v. Uber Techns.*, No. 13-CV-03826-EMC, Docket No. 736 (N.D. Cal. July 29, 2016).

At least one court has applied the factors in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998), to evaluate a PAGA settlement. *See O'Connor v. Uber Techs.*, 201 F. Supp. 3d. 1110, 1134 (N.D. Cal. 2016) The *Hanlon* factors, which are used to evaluate class action settlements, include (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026. Many of these factors are not unique to class action lawsuits and bear on whether a settlement is fair and has been reached through an adequate adversarial process. Thus, the Court finds that these factors are useful in evaluating a PAGA settlement. However, three of the *Hanlon* factors – risk of maintaining class action status, presence of a governmental participant, and reaction of class members – are not relevant to a PAGA settlement that is not a class action and in which the LWDA is not involved.

Additionally, Plaintiff argues that another section of the PAGA may contain a factor relevant to the Court's analysis. Specifically, for PAGA claims based on health and safety

5

Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

violations, the PAGA requires courts to "review and approve any proposed settlement . . . to ensure that the settlement provisions are at least as effective as the protections or remedies provided by state and federal law or regulation for the alleged violation." Cal. Labor Code § 2699.3(b)(4). By its terms, this provision does not apply to the instant settlement, because the instant case involves wage and hour claims rather than health and safety violations. However, the Court agrees that determining whether settlement provisions are "at least as effective as the protections or remedies provided by state and federal law" may be useful in determining whether the instant settlement is fair and reasonable. *Id.*

For these reasons, the Court evaluates the PAGA settlement in light of the PAGA requirement that the award not be "unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). The Court also considers the five relevant *Hanlon* factors and discusses whether "the settlement provisions are at least as effective as the protections or remedies provided by state and federal law or regulation." Cal. Labor Code § 2699.3(b)(4).

Before considering these factors, however, the Court first notes one additional feature of the instant settlement. The parties characterize all PAGA penalties recovered in the instant case as underpaid wages. *See* Settlement Agreement at 3 (describing $27,500 as "PAGA wage payments to Eligible Employees who submit claims . . . ."); ECF No. 58, at 2 (same); ECF No. 59 ("With respect to the PAGA claims on behalf of the Defendant's employees, the parties came to the conclusion that the claim with the most likelihood of success and of the highest benefit to the representative class was the unpaid wage claim . . . ."). In this case, Plaintiff alleged 19 individual causes of action and one PAGA cause of action. Because no federal or state claim was brought on a putative class action basis, the employees eligible to receive a share of the PAGA settlement fund, other than the plaintiff, will receive compensation for their underpaid wages only through the PAGA cause of action. Thus, classifying the PAGA penalties in this case solely as underpaid wages is reasonable.

Under the PAGA, "underpaid wages go[] entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are

6
Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

distributed 75 percent to the Labor and Workforce Development Agency (LWDA) and 25 percent to the aggrieved employees." *Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1145, 138 Cal. Rptr. 3d 130, 157 (2012); *see also Esparza v. KS Indus., L.P.*, 2017 WL 3276363, at *7 (Cal. Ct. App. Aug. 2, 2017) (same). Indeed, in the instant case, the LWDA filed a letter with the Court stating that the LWDA would not seek any penalties. ECF No. 60. LWDA did not object to the settlement in the instant case. *Id.*

Therefore, with the understanding that all PAGA penalties recovered in the instant settlement are classified as underpaid wages, the settlement properly provides that the PAGA settlement fund shall be paid entirely to the aggrieved employees. The Court next considers each of the factors discussed above.

### 1. "Unjust, Arbitrary and Oppressive, or Confiscatory" as to Defendant

This factor favors approval of the proposed settlement. There is no indication that the settlement in the instant case would be "unjust, arbitrary and oppressive, or confiscatory." Cal. Labor Code § 2699(e)(2). To the contrary, in the negotiation process and the resulting settlement, the parties took account of Defendant's weak financial condition and ensured that the settlement would not significantly weaken Defendant further. Linda Chu, the owner of Benito Valley Farm, has filed a declaration in support of the motion for settlement approval. ECF No. 53-5. In this declaration, Chu states that due to recent rain storms and flooding, Defendant has suffered an estimated loss of $300,000. *Id.* ¶¶ 4–5. Chu has applied for a bank loan and a United States Department of Agriculture grant in order to "keep [Benito Valley Farm] going." *Id.* ¶¶ 6–7. During the preliminary approval hearing, Plaintiffs' counsel stated that they had confirmed Defendant's weak financial condition through a review of Defendant's financial records. Settling at this early stage prevents further expensive litigation for Defendant. *See* ECF No. 54 at 11 ("[I]t has become clear that Defendant, from an economic standpoint based on its tax returns and other data, does not have the resources to withstand significant litigation, let alone a sizable judgment.").

### 2. Strength of Plaintiff's Case

This factor favors approval. Courts have noted that legal uncertainty favors approval of a

7
Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

settlement. *See, e.g., Browning v. Yahoo! Inc.*, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). The parties reached a settlement early on in the instant case, before any motions practice. Although Plaintiff's counsel investigated the case in depth, there was significant uncertainty in continuing the litigation. Additionally, as Plaintiff points out, further litigation to strengthen Plaintiff's case would drain Defendant of resources that it could otherwise use to pay a settlement and improve its business practices.

### 3. Risk, Expense, Complexity, and Likely Duration of Further Litigation

This factor strongly favors approval. The parties reached a settlement early on in the litigation. As discussed above, further litigation would necessitate further expenses and costs for both Plaintiff and Defendant. Given Defendant's weak financial condition, continuing litigation would decrease the amount available for settlement and would financially weaken Defendant. Thus, further litigation may harm Defendant to such an extent that there are few resources available for a monetary recovery or for injunctive relief. Indeed, continuing litigation, even if it strengthens Plaintiff's legal argument, may harm Plaintiff because it may render Defendant less able to pay any final judgment. The settlement provides a timely, certain, and meaningful recovery, while the outcome at trial—and any subsequent appeal—is not certain, and in any event would substantially delay recovery.

### 4. Amount of Settlement

This factor favors approval. The settlement provides for $27,500 in PAGA penalties. Although this represents only 4.5% of the total estimated possible recovery for PAGA civil penalties, considering the very early stage of this litigation and Defendant's weak financial condition, this percentage is reasonable. Additionally, the settlement's injunctive relief provides that Defendant will comply with California wage and hour laws in the future, that Defendant will join a Farm Employer Association, and that Defendant will ensure that employees are fully trained to prevent and respond to claims of sexual harassment. The settlement also provides that Defendant will hold meetings to discuss preventing sexual harassment and retaliation with

8

Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

Defendant's crew foreperson every harvesting season and will provide a telephone number to report harassment in English or Spanish. Finally, the settlement provides that Defendant will submit to an audit of its payroll by Plaintiff's counsel in March 2018.

Together, these provisions represent a significant recovery, especially considering the early stage of the litigation. Additionally, considering Defendant's weakened financial state, the proposed settlement is the most significant recovery that Plaintiff is likely to receive. Therefore, the amount of the settlement weighs in favor of approval.

### 5. Extent of Discovery Completed and Stage of the Proceedings

This factor weighs in favor of approval. Although this case settled very early in the litigation process, Plaintiff's counsel had conducted an extensive review of the evidence. As discussed above, "[t]he pre-suit investigation included extensive interviews with Plaintiff, a thorough review of potential witnesses and other corroborating evidence, as well as inspections of the employer-provided housing." ECF No. 54 at 3. After the filing of the complaint, "Defendant disclosed a sampling of employee records, which Plaintiff analyzed for wage and hour violations." *Id.* at 4. Thus, at the time of settlement, both sides had a well-developed sense of the risks and benefits of continuing litigation.

### 6. Experience and Views of Counsel

This factor favors approval. The parties here are represented by competent, experienced, and sophisticated counsel who favor settlement. Particularly, Plaintiff's counsel, California Rural Legal Assistance ("CRLA"), has expertise in cases involving the rights of farm workers and has significant experience in PAGA litigation. *See, e.g.*, ECF No. 53-4 ¶ 2 ("I have participated in the settlement of six to eight PAGA lawsuits in state court."). Thus, CRLA's view of the possible results and risks from this type of litigation is entitled to great weight.

### 7. Whether the Settlement is "at Least as Effective as the Protections or Remedies Provided by State and Federal Law or Regulation"

As discussed above, the settlement provides for significant injunctive relief. The settlement provides that Defendant will comply with California wage and hour laws in the future, that

9

Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

Defendant will join a Farm Employer Association, and that Defendant will ensure that employees are fully trained to prevent and respond to claims of sexual harassment in English or Spanish. The settlement also provides that Defendant will hold meetings to discuss preventing sexual harassment and retaliation with Defendant's crew foreperson every harvesting season and will provide a telephone number to report harassment in English or Spanish. Finally, the settlement provides that Defendant will submit to an audit of its payroll by Plaintiff's counsel in March 2018.

In the motion for approval, Plaintiff states that the injunctive provisions included in the settlement agreement "are the type that LWDA would likely impose, though they reach more broadly to address other issue areas, such as the prevention of sexual harassment and retaliation." ECF No. 54 at 12. Additionally, LWDA wrote a letter to the Court and did not object to the settlement. ECF No. 60. Therefore, this factor is also met.

### 8. Conclusion

Thus, each of the seven relevant factors discussed above favors final approval. The settlement of the PAGA claims in the instant case was reached only after a thorough investigation and extensive negotiations involving counsel with significant experience in PAGA cases. Additionally, the $27,500 PAGA settlement fund and the injunctive relief represent a significant recovery that strongly vindicates California state law enforcement agencies' interest in enforcing the law. For these reasons, the Court finds that the proposed settlement is fair and reasonable and promotes the purposes of the PAGA. Therefore, the Court GRANTS Plaintiff's motion for settlement approval.

### B. Attorney's Fees

The Court also finds that an award of $41,800 for attorney's fees and costs is warranted. The PAGA provides that "[a]ny employee who prevails in any action shall be entitled to an award of reasonable attorney's fees and costs." Cal. Labor Code § 2699(g)(1). The PAGA does not provide a specific standard for evaluating attorney's fees in connection with a settlement of PAGA claims. However, the parties agree that the lodestar method is the preferable method for measuring attorney's fees in the instant case. Additionally, the lodestar method is a well-established method

for determining the reasonableness of an attorney's fee award. *See, e.g.*, *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *8 (N.D. Cal. June 5, 2017).

Therefore, the Court applies the lodestar method in determining whether the requested attorney's fees are reasonable in the instant case. Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

Under the Civil Local Rules for United States District Court for the Northern District of California, a motion for attorneys' fees and costs must include (1) the number of hours spent on the litigation by each biller, (2) detailed billing records showing how much time was spent on each task, and (3) each biller's billable rate and justification for such rate.

Plaintiff's counsel reports a total lodestar of $101,212.75 up to the time of the March 10, 2017. This lodestar does not include work performed since the March 10, 2017. This total lodestar includes $95,306.50 for 365.97 hours worked by attorneys and $5,906.25 for 78.75 hours worked by community workers. Specifically, Plaintiff's counsel requests fees for the following attorneys and community workers with the following hourly rates:

- 247.65 hours expended by Maria Vizzuzi, ($250.00 per hour);
- 12 hours expended by Michael Meuter, ($450.00 per hour);
- 1.5 hours expended by Blanca Banuelos, ($450.00 per hour);
- 14.42 hours expended by Lisa Cisneros, ($450.00 per hour);
- 34.25 hours expended by Lisel Holdenried, ($350.00 per hour);
- 1.4 hours expended by Cynthia Rice, ($450.00 per hour);
- 21 hours expended by Ana Vicente, ($150.00 per hour);
- 33.75 hours expended by Liliana Garcia, ($150.00 per hour);
- 75.75 hours expended by Mariano Alvarez, ($75.00 per hour);
- 3 hours expended by Jesus Lopez, ($75.00 per hour)

11
Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

Plaintiff has provided detailed, contemporaneous billing records that indicate that the hours spent on the instant litigation were justified. However, Plaintiff does not provide information to justify the individual rates of all billers. Instead, Plaintiff includes information regarding the education and experience of only four billers: Lisa Cisneros, Michael Meuter, Maria Vizzuzi, and Blanca Banuelos. ECF Nos. 53-3, 53-2. Having reviewed this information, the Court finds that the education and experience of each attorney justifies these four attorneys' requested rates. Therefore, the Court finds that the billing rates of these four attorneys are adequately justified.

The Court lacks information to justify the billing rates of the other six billers. Ordinarily, the Court would require more detailed justifications of the billing rates for these billers before awarding attorney's fees. However, in the instant case, the lodestar of the four attorneys whose rates Plaintiff has justified is more than sufficient to make the requested $41,800 in attorney's fees and costs reasonable. Specifically, the lodestar of Lisa Cisneros, Michael Meuter, Maria Vizzuzi, and Blanca Banuelos totals $74,476.50.[1] Thus, the requested $41,800 represents a significant discount from even this subset of Plaintiff's lodestar. The $41,800 requested fee reflects a 56.1% multiplier of the $74,476.50 lodestar for which Plaintiff has provided adequate justification of individual billing rates. The $41,800 requested fee reflects a 41.3% multiplier of Plaintiff's total lodestar of $101,212.75.

Thus, even if the Court considers only the subset of the lodestar for which Plaintiff has provided adequate justification of billing rates, the Court finds that the requested attorney's fees award is justified. This is especially true because Plaintiff has not requested attorney's fees for the significant amount of work performed after the March 10, 2017 mediation or the work that Plaintiff's counsel will continue to do, including the March 2018 audit of Defendant to ensure compliance with wage and hour laws.

Plaintiff has achieved a significant result that strongly vindicates the state's interest in enforcing wage and hour laws. Defendant has agreed to pay $27,500 as civil penalties under

---

[1] Indeed, the lodestar of Maria Vizzuzi alone totals $61,912.5.

Case No. 16-CV-04708-LHK
ORDER APPROVING SETTLEMENT

PAGA and has agreed to significant injunctive relief. Additionally, Plaintiff's counsel devoted significant resources to the difficult task of investigating Plaintiff's claims, analyzing Defendant's records, and negotiating a settlement that allows for maximum recovery despite Defendant's weakened financial state.

For these reasons, the Court finds that the requested $41,800 in attorney's fees is reasonable within the meaning of California Labor Code § 2699(g)(1). Therefore, the Court GRANTS Plaintiff's request for attorney's fees in connection with the PAGA settlement.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion for settlement approval and Plaintiff's request for attorney's fees. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 25, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge