UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION

| | |
|---|---|
| FRANCISCA RAMIREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>BENITO VALLEY FARMS, LLC,<br><br>    Defendant. | Case No. 16-CV-04708-LHK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES**<br><br>Re: Dkt. No. 63 |

Plaintiff Francisca Ramirez ("Plaintiff") sued Defendant Benito Valley Farm, LLC ("Defendant") for individual claims and representative claims under the California Private Attorney General's Act ("PAGA") arising from Plaintiff's employment with Defendant. On August 25, 2017, the Court granted approval of the parties' settlement pursuant to PAGA. ECF No. 61. Before the Court is Plaintiff's unopposed motion to enforce the settlement. Having considered Plaintiff's submissions, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion to enforce the settlement.

## I. BACKGROUND

### A. Factual Background

Plaintiff worked for Defendant from 2006 to 2016 as a seasonal agricultural worker harvesting green beans. ECF No. 54 at 2. During this time Plaintiff lived with her family in

1
Case No. 16-CV-04708-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

housing owned by Defendant. *Id.* Plaintiff alleges that her supervisor, Foreman Alfonso Flores, created a hostile work environment and engaged in discrimination and retaliation directed at Plaintiff. *Id.* at 3. Plaintiff also alleges Defendant failed to comply with its legal duties in the provision of housing because the employee housing in which Plaintiff resided contained serious habitability issues, including inadequate flooring and the presence of rats and flies. *Id.*

Plaintiff complained about these habitability issues, but Defendant failed to adequately address the issues. *Id.* Plaintiff also alleges that Defendant repeatedly failed to compensate employees for all hours worked, failed to pay overtime wages, and between 2012 and 2014, failed to provide rest and meal breaks. *Id.* Plaintiff also alleges that Defendant's payroll records and paycheck registers were defective and contain inaccurate information. *Id.*

### B. Plaintiff's Lawsuit Against Defendant

Plaintiff filed the complaint in the instant case on August 17, 2016. ECF No. 1. Plaintiff filed an amended complaint ("FAC") on September 15, 2016. ECF No. 14. The FAC contained twenty claims, which sought damages for Plaintiff's nineteen individual claims and civil penalties under the PAGA. Defendant filed an answer, apparently to the original complaint, on October 25, 2016. ECF No. 20. Defendant filed an answer to the FAC on December 9, 2016. ECF No. 34.

On March 10, 2017, the parties attended a mediation session and reached a tentative settlement. ECF No. 54 at 4. After several more rounds of negotiation, the parties executed a settlement agreement on June 12, 2017. *Id.* This settlement agreement, discussed in more detail below, provides $40,700 in compensation for Plaintiff's individual damages, $27,500 in civil penalties under the PAGA, injunctive relief, and $41,800 in attorney's fees, for a total settlement amount of $110,000. *See* ECF No. 53-1 ("Settlement Agreement").

On June 23, 2017, Plaintiff filed an unopposed motion for approval of the settlement. ECF No. 53. Under PAGA, "court[s] shall review and approve any settlement of any civil action filed pursuant to [PAGA]." Cal. Labor Code § 2699(1)(2). Accordingly, the Court was required to approve the settlement provisions related to Plaintiff's PAGA claims. In addition, Plaintiff

2

Case No. 16-CV-04708-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

requested approval of the settlement provisions providing for attorney's fees and costs. ECF No. 54 at 13.

On August 25, 2017, the Court approved those portions of the settlement relating to Plaintiff's PAGA claims and those portions of the settlement providing for attorney's fees and costs. ECF No. 61.

### C. Settlement Provisions

The Court now discusses specific relevant provisions of the settlement. First, the settlement requires Defendant to implement certain business practices and "comply with all California wage and hour laws." Settlement Agreement § I.A. Specifically, Defendant agreed "that Plaintiff's counsel will conduct an audit of payroll in March 2018." *Id.* § I.B. Defendant also agreed to "join a Farmer Employer Association," *id.* § I.C., and to "take steps necessary to ensure that Supervisors, Foreman [sic], and non-supervisory employees are properly trained" on sexual harassment policies and procedures. *Id.* § I.D. Defendant also agreed that "at least one time during each harvesting season, the crew Foreman will conduct a 'tail-gate' meeting with his or her crew members on the topic of preventing sexual harassment and retaliation." *Id.* § I.D.ii. Finally, Defendant agreed to provide employees with a written notice in Spanish "informing them of a dedicated telephone number for reporting harassment directly to the owner." *Id.* § I.E.

Second, the Settlement requires Defendant to pay $40,700 to Plaintiff, *id.* § II.A.i.; $41,800 to Plaintiff's counsel's for attorney's fees and costs, *id.* § II.A.ii.; and $27,500 in PAGA civil penalties to eligible employees. As the Court explained in approving the settlement, 226 employees were eligible to receive a proportionate share of the PAGA civil penalties. ECF No. 61 at 3. Because the penalties were classified as underpaid wages, the money in the PAGA fund was paid entirely to the affected employees. *Id.* at 6–7; *see also Thurman v. Bayshore Transit Mgmt., Inc.*, 203 Cal. App. 4th 1112, 1145 (2012) (explaining that under PAGA, "underpaid wages go[] entirely to the affected employee or employees as an express exception to the general rule that civil penalties recovered in a PAGA action are distributed 75 percent to the Labor and Workforce

3

Case No. 16-CV-04708-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

Development Agency (LWDA) and 25 percent to the aggrieved employees").

The settlement requires Defendant to pay Plaintiff her individual payment within three months of the Court's approval of the settlement. Settlement Agreement § III.A. The agreement also requires Defendant to pay PAGA penalties to employees within nine months of the Court's approval and to pay Plaintiff's counsel's attorney's fees and costs within 12 months of the Court's approval. *Id.* §§ III.B-C.

The settlement imposes automatic penalties if Defendant fails to timely disburse the above payments. Specifically, the parties agreed to the following:

> The parties agree that Plaintiff's counsel will give written and electronic notice to the firm of Noland Hamerly Etienne and Hoss no later than seven days after a required installment payment is not received by Plaintiff's counsel. A stipulated judgment may be filed upon default by more than fifteen calendar days by Defendant, as to any installment payment due pursuant to this Agreement. In such event, any remaining unpaid balance shall become immediately due and shall accrue interest at the legal rate. The Defendant also agrees that in addition to the remaining unpaid balance, there will be liquidated damages in the amount of 50% of the unpaid balance.

*Id.* § IV.

Finally, the settlement provides that if any party sues to enforce the settlement, "the prevailing party in such suit shall be entitled to recover, in addition to any other relief, his/her or its costs and expenses, including court costs and attorneys' fees, if any, incurred in connection with such suit." *Id.* § VI.F. The settlement provides for the Court's continuing jurisdiction to enforce the settlement: "The parties hereby submit themselves to the continuing jurisdiction of the Court, which shall have authority to enforce all terms of this Agreement." *Id.* § VI.B.

**D. Post-Settlement Events**

Defendant paid Plaintiff her individual settlement amount in installments between November 27, 2017 and April 6, 2018. ECF No. 63-1, Declaration of Ana Vicente de Castro ("Vicente Decl."), ¶ 11. Although Defendant did not comply with the settlement's requirement to pay Plaintiff the entirety of her individual settlement amount by November 25, 2017, Plaintiff agreed to allow Defendant to pay Plaintiff in installments. *Id.* Defendant also timely paid the

4

$27,500 in PAGA civil penalties to affected employees. *Id.* ¶ 12.

On March 20, 2018, Defendant provided Plaintiff with a copy of Defendant's anti-harassment policies and notices to employees. *Id.* ¶ 29; *see* Ex. 9.

On March 20, 2018, Plaintiff's counsel asked Defendant, through counsel, to provide "[a] certificate, membership card or email confirmation of membership in a Farm Employer Association." Ex. 8 at 1. Defendant's counsel responded not with a certificate, membership card, or email confirmation, but wrote that Defendant "is a member of Bay Area Chrysanthemum Growers." *Id.*

Defendant has failed to comply with at least two settlement provisions: the audit provision and the attorney's fees provision. Plaintiff's counsel attests under penalty of perjury that Defendant failed to pay Plaintiff's attorney's fees and costs by August 25, 2018—within twelve months of the Court's August 25, 2017 approval of the settlement—as the settlement requires. *Id.* ¶ 21. To date, Defendant has not paid Plaintiff's attorney's fees.

On seven different occasions between August 27, 2018 and November 27, 2018, Plaintiff's counsel requested in writing that Defendant pay Plaintiff's attorney's fees due under the settlement. *Id.*; *see* Ex. 2. On August 27, 2018, Plaintiff's counsel wrote: "What is the status of the attorney's fees check on [sic] this case?" *Id.* at 5. Defendant's counsel replied: "I will forward your request to Ms. Chu [Defendant's owner]." *Id.* Eventually, on September 7, 2018, Defendant's counsel asked for more time to make the payment: "As I related to you in our phone conversation, my client will need more time to pay the attorney fee award in this case." *Id.* at 4. Defendant requested to pay the attorney's fees in installments, beginning with a $5,000 payment at the end of September 2018. *Id.* Plaintiff agreed. *Id.* at 3. However, Plaintiff's counsel received no such payment by the end of September 2018. *Id.* at 2. On November 15, 2018, Defendant's counsel wrote that Defendant could not pay the attorney's fees: "Apparently, your lawsuit forced my client out of business as they were unable to pay the rent on the land they were farming and are being evicted. No land, no crops, no funds to pay attorney fees." *Id.* at 1. To date, Defendant has

5

not paid any of the $41,800 in attorney's fees provided for under the settlement. Vicente Decl. ¶ 24.

Plaintiff's counsel also attests under penalty of perjury that Defendant failed to permit Plaintiff's counsel to conduct a March 2018 audit of Defendant's payroll, as is required under the settlement. *Id.* ¶ 27. On seven different occasions between March 20, 2018 and November 27, 2018, Plaintiff's counsel requested Defendant's payroll records. *Id.*; *see* Ex. 7. For example, on May 3, 2018, Plaintiff's counsel wrote: "I haven't received the payroll records that should have been provided in March 2018 for the audit agreed to on [sic] the settlement agreement." Ex. 7 at 5. Defendant's counsel responded that he would pass the message to his client. *Id.* On October 4, 2018, Plaintiff's counsel again requested payroll records: "Our first priority is to complete the audit that is required under the settlement agreement. Without the audit, we are out of compliance with the court-approved settlement (Part I.B), and we do not have assurances that your client is now complying with applicable wage and hour laws." *Id.* at 3.

Plaintiff requested that Defendant provide the names or IDs of individuals that Defendant employed from June 2017 to October 2018, and proposed that Plaintiff would randomly select 25% of those employees. *Id.* Plaintiff would send those names or IDs to Defendant, and Defendant would provide "the payroll and timekeeping records, and copies of paystubs for each of the sampled employees." *Id.* On October 10, 2018, Defendant's counsel again wrote that he would pass the message to Defendant: "I have passed your message to my client and am awaiting a reply." *Id.* at 2. To date, Defendant has not provided Plaintiff's counsel with any employee information or payroll records to conduct the March 2018 audit. Vicente Decl. ¶ 27.

On March 22, 2019, Plaintiff filed the instant motion to enforce the settlement agreement. ECF No. 63 ("Mot."). On April 4, 2019, the parties filed a stipulation to modify the briefing schedule on Plaintiff's motion to enforce the settlement agreement. ECF No. 64. The parties stipulated that Defendant's brief in opposition to the motion to enforce would be due May 3, 2019 and that Plaintiff's reply brief would be due May 10, 2019. *Id.*

On April 5, 2019, the Court granted the parties' stipulation to modify the briefing schedule on Plaintiff's motion to enforce the settlement agreement. ECF No. 66. However, Defendant did not file its opposition brief on the May 3, 2019 due date, nor has Defendant filed any opposition in the two months since.

## II. LEGAL STANDARD

District courts have the inherent power to enforce a settlement agreement in an action pending before it. *See TNT Mktg., Inc. v. Aaresti*, 796 F.2d 276, 278 (9th Cir. 1986). "The moving party has the burden of demonstrating that the parties formed a legally enforceable settlement agreement." *Woods v. Carey*, 2015 WL 7282749, *4 (E.D. Cal. Nov. 18, 2015). "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally." *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989). This is true even if the underlying cause of action is based upon a federal statute. *Woods*, 2015 WL 7282749 at *4. Thus, the Court applies California law "regarding formation and interpretation of contracts in determining whether a legally enforceable settlement agreement was reached." *Id.* The law favors construing settlements to be enforceable. *Jeff D.*, 899 F.2d at 759.

## III. DISCUSSION

In the instant motion, Plaintiff asks the Court to enforce two provisions of the settlement: (1) Defendant's obligation to submit to a payroll audit by Plaintiff; and (2) Defendant's obligation to pay Plaintiff's attorney's fees. Plaintiff also requests additional attorney's fees incurred in connection with filing the instant motion to enforce. The parties stipulated to extend Defendant's deadline to file an opposition to Plaintiff's motion to enforce to May 3, 2019, ECF No. 64, which the Court granted. ECF No. 66. However, Defendant did not file an opposition on May 3, 2019, nor has Defendant filed any opposition to date. The Court first discusses Plaintiff's motion to enforce the two settlement provisions at issue and then discusses Plaintiff's request for attorney's fees related to the instant motion.

### A. Enforcement of the Settlement

7

Case No. 16-CV-04708-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

Plaintiff seeks to enforce Defendant's settlement obligations to submit to a payroll records audit and to pay Plaintiff $41,800 in attorney's fees. Before the Court addresses those provisions, the Court establishes its jurisdiction to enforce the settlement. The parties expressly agreed in the settlement that the Court would retain jurisdiction to enforce the settlement: "The parties hereby submit themselves to the continuing jurisdiction of the Court, which shall have the authority to enforce all terms of this Agreement." Settlement Agreement § VI.B. The United States Supreme Court has held that parties may contract in a settlement agreement that the Court retains jurisdiction to enforce the settlement. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994); *see K.C. ex rel. Erica C. v. Torlakson*, 762 F.3d 963, 967 (9th Cir. 2014) (holding that where the district court "specifically retained jurisdiction over the Settlement Agreement," the court had jurisdiction to enforce the agreement). Here, because the parties agreed in the settlement that the Court has continuing jurisdiction to enforce "all terms" of the settlement, and Plaintiff seeks to enforce certain terms in the settlement, jurisdiction is proper under *Kokkonen*.

**1. Payroll Audit Provision**

The Court now turns to the settlement provisions that Plaintiff wishes to enforce. First, under the settlement, Defendant agreed "to comply with all California wage and hour laws, including properly paying workers for hours worked and maintaining proper payroll records." Settlement Agreement § II.A. To ensure Defendant's compliance, the parties agreed that Plaintiff's counsel would audit Defendant's payroll records in March 2018: "Defendant agrees that Plaintiff's counsel will conduct an audit of payroll in March 2018." *Id.* § I.B.

Defendant has not submitted an opposition or any other filing disputing the existence or validity of the Settlement Agreement, or Defendant's noncompliance with the payroll audit provision. The record also reflects Defendant's noncompliance with the settlement. At no point has Defendant provided Plaintiff's counsel any information necessary to conduct a payroll audit. Vicente Decl. ¶ 27. This is so even though Plaintiff's counsel requested payroll records for an audit on *seven different occasions* between March 2018 and November 2018 before filing the

instant motion. *Id.*; *see* Ex. 7. For example, on May 3, 2018, Plaintiff's counsel requested payroll records from Defendant's counsel: "I haven't received the payroll records that should have been provided in March 2018 for the audit agreed to on [sic] the settlement agreement." Ex. 7 at 5. Defendant's counsel responded that he would pass the message to his client. *Id.* Yet Defendant has not provided Plaintiff with the payroll records of any employees, either by the March 2018 deadline or to date. Vicente Decl. ¶ 27. Thus, the Court may enforce the settlement and require Defendant's compliance with the payroll audit provision. *See Hernandez v. Mayorga*, 2018 WL 1964678, at *2 (N.D. Cal. Apr. 26, 2018) ("A court may order compliance with a settlement agreement in light of evidence of a party's non-compliance.").

Accordingly, the Court orders Defendant to allow Plaintiff's counsel to audit Defendant's payroll records. Specifically, within five business days of this order, Defendant shall provide Plaintiff's counsel with a list of all of Defendant's employees (either by name or employee ID number) between June 2017 and the present. Within five business days of such receipt, Plaintiff will send Defendant a random selection of 25% of the employees. Then, within five additional business days, Defendant shall provide Plaintiff's counsel with those employees' payroll records from June 2017 to the present.

### 2. Attorney's Fees Provision

Second, Defendant agreed to pay Plaintiff $41,800 in attorney's fees and costs, and to do so within twelve months of the Court's approval of the settlement. Settlement Agreement §§ II.A.ii, III.C. On August 25, 2017, the Court approved the parties' settlement, including the provision awarding Plaintiff's counsel $41,800 in attorney's fees and costs. ECF No. 61 at 10 ("The Court also finds that an award of $41,800 for attorney's fees and costs is warranted."). Accordingly, Defendant was required to pay Plaintiff's counsel $41,800 in attorney's fees and costs by August 25, 2018, twelve months after the Court approved the settlement.

However, to date, Defendant has not paid Plaintiff *any portion* of those $41,800 in attorney's fees and costs. The record reflects that on seven different occasions between August

Case No. 16-CV-04708-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

27, 2018 and November 27, 2018, Plaintiff inquired with Defendant's counsel about the status of the attorney's fees payment. *See, e.g.*, Ex. 2 at 5 (September 7, 2018 email stating "[t]he attorney's fees payment is 14 days late according to the settlement agreement your client signed. What is the status of the payment?"); *id.* at 2 (November 14, 2018 email stating "Please let us know by the end of this week whether your client is willing to provide the pay records for the audit and to make the attorney's fees payment"). On November 15, 2018, Defendant's counsel replied and stated that Plaintiff would not be receiving attorney's fees: "Apparently, your lawsuit forced my client out of business as they were unable to pay the rent on the land they were farming and are being evicted. No land, no crops, no funds to pay attorney fees." *Id.* at 1. To date, Defendant has not paid Plaintiff any attorney's fees. Vicente Decl. ¶ 24.

Accordingly, it is undisputed that Defendant has not complied with its obligation to pay Plaintiff's counsel's attorney's fees. The settlement also provides for additional penalties in the event of such non-payment. Specifically, if Defendant fails to make any settlement payment within 15 days of the due date, "any remaining unpaid balance shall become immediately due and shall accrue interest at the legal rate" and "in addition to the remaining unpaid balance, there will be liquidated damages in the amount of 50% of the unpaid balance." Settlement Agreement § 4. Because Defendant failed to pay attorney's fees and costs by September 9, 2018, within 15 days of the August 25, 2018 due date, the interest and liquidated damages provisions apply.

Plaintiff asserts that the legal rate of interest is 10%, but does not cite any source for that high rate. *See* Mot. at 5. Rather, under 28 U.S.C. § 1961, the legal rate of interest on a final judgment "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a). Accordingly, Defendant must pay Plaintiff interest on the $41,800 in unpaid attorney's fees at the rate set forth in 28 U.S.C. § 1961(a).

Per the settlement, Defendant also owes Plaintiff liquidated damages in the amount of 50%

Case No. 16-CV-04708-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES

of the unpaid balance, which equates to $20,900 in liquidated damages. Thus, in accordance with the parties' settlement, the Court orders Defendant to pay Plaintiff (1) attorney's fees in costs in the amount of $41,800; and (2) liquidated damages in the amount of $20,900, for a total of $62,700. Defendant shall also pay Plaintiff post-judgment interest on the $41,800 unpaid balance at the rate set forth in 28 U.S.C. § 1961(a). Defendant shall make such payment within fourteen business days of the Court's order.

### B. Plaintiff's Request for Attorney's Fees Incurred in Connection with this Motion

Lastly, Plaintiff requests additional attorney's fees incurred in connection with the instant motion to enforce the settlement. Mot. at 6. The settlement provides that if any party sues to enforce the settlement, "the prevailing party in such suit shall be entitled to recover, in addition to any other relief, his/her or its costs and expenses, including court costs and attorneys' fees, if any, incurred in connection with such suit." Settlement Agreement § VI.F. Thus, pursuant to the settlement, Plaintiff is entitled to her attorney's fees and costs "incurred in connection" with Plaintiff's motion to enforce. *See* Cal. Civ. Proc. Code § 1021 ("Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation and attorneys and counselors at law is left to the agreement, express or implied, of the parties.").

Plaintiff requests $13,900 in fees and costs incurred in connection with the instant motion. Under California law, the Court may determine whether the prevailing party's attorney's fees and costs incurred to enforce a contract are reasonable. Cal. Civ. Code § 1717(a). Here, the Court evaluates whether Plaintiff's request is reasonable under the lodestar method, which is a well-established method for determining the reasonableness of an attorney's fee award. *See, e.g.*, *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *8 (N.D. Cal. Jun. 5, 2017). Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)).

11

Plaintiff reports a total lodestar of $13,900 up to the date of the March 22, 2019 motion to enforce. Vicente Decl. ¶¶ 36–38. This total lodestar reflects $13,900 for 55.6 hours worked by one attorney, Ana Vicente de Castro, both to attempt to ensure Defendant's compliance with the settlement and to file this motion once Defendant did not comply. *Id.* Ana Vicente de Castro's hourly rate is $250. *Id.* ¶ 37. Plaintiff has provided detailed, contemporaneous billing records that indicate that the hours spent on the instant motion were justified. Vicente Decl., Ex. 11. Plaintiff has also provided information regarding Ana Vicente de Castro's education and experience. Vicente Decl. ¶ 35. In this very case, the Court has previously found that a billing rate of $250 was adequately justified for an attorney of comparable education and experience who was then representing Plaintiff. *See* ECF No. 61 at 12; *cf.* ECF No. 53-3 at ¶¶ 7–8. Accordingly, the Court finds that Ana Vicente de Castro's billing rate is adequately justified.

Further, Plaintiff achieved a significant result that strongly vindicates the state's interest in enforcing wage and hour laws. Plaintiff's instant motion further vindicates that interest by attempting to ensure Defendant's compliance with the settlement. Therefore, because the settlement entitles Plaintiff to seek attorney's fees incurred in connection with the instant motion and because Plaintiff's request for $13,900 in attorney's fees is reasonable, the Court GRANTS Plaintiff's request for attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to enforce the settlement and GRANTS Plaintiff's request for attorney's fees. Defendant shall pay $76,600 to Plaintiff within fourteen business days of the Court's order.

**IT IS SO ORDERED.**

Dated: June 28, 2019

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

12
Case No. 16-CV-04708-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT; GRANTING PLAINTIFF'S REQUEST FOR ATTORNEY'S FEES